UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20358-Civ-MORENO
(05-20946-Cr-MORENO)
MAGISTRATE JUDGE P. A. WHITE

TEODORO JULIO GONZALEZ,    :

       Movant,    :

v.    :    REPORT OF
MAGISTRATE JUDGE

UNITED STATES OF AMERICA,    :

       Respondent.    :

_____

## Introduction

    This matter is before this Court on the movant Teodoro Julio Gonzalez's Amended Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for possession of stolen property shipped in interstate commerce following a guilty plea in 05-20946-Cr-MORENO. [DE# 11]. The Undersigned has reviewed the Amended Motion, the government's response, the movant's Traverse, the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

## Claims Raised

    In his amended §2255 Motion [DE# 11], the movant claims that he was denied his constitutional right to effective assistance of counsel, where his attorney:

    1.    Failed to assist him in deciding whether to stand trial or enter into a plea agreement, as the attorney failed to adequately acquaint himself with the facts and law of the

case.

2.    Induced him to enter into a plea agreement by representing that the government had agreed to a side cooperation agreement, and the government's failure to file a motion for reduction of sentence based on substantial assistance renders the plea invalid.

3.    Stipulated at sentencing that $1.5 million in restitution was mandatory rather than discretionary.

The movant further claims that the government has failed to fulfill its promise of filing a motion for reduction of sentence after he provided substantial assistance.

## Procedural History

The procedural history of the underlying criminal case is as follows.  On December 15, 2005, a criminal complaint was lodged charging the movant with conspiracy to possess stolen property shipped in interstate commerce, in violation of 18 U.S.C. §371, and possession of stolen property shipped in interstate commerce, in violation of 18 U.S.C. §2315. (Case No. 05-20946-Cr-MORENO, hereinafter "Cr" DE# 1).  That same day, Israel Perez, Jr., Esq. filed a temporary appearance on the movant's behalf. (Cr-DE# 3). On December 20, 2005, the Honorable Ted E. Bandstra set a bond of $200,000 personal surety and $200,000 corporate surety, with electronic monitoring and an 11:00 p.m. to 6:00 a.m. curfew. (Cr-DE# 8).  Two days later, a federal grand jury in this Court returned a three count indictment against the movant, charging him with conspiracy to possess stolen property shipped in interstate commerce, in violation of 18 U.S.C. §371, and in Counts 2 and 3

2

with possession of stolen property shipped in interstate commerce, in violation of 18 U.S.C. §2315. (Cr-DE# 10).  On January 31, 2006, the matter was set for trial beginning on February 8, 2007. (Cr-DE# 22).

When the movant's counsel informed the Court that the matter would be resolved by way of a change of plea, the case was set for a change of plea hearing on February 6, 2006. (Cr-DE# 25).  The movant failed to appear at this hearing because he had removed his electronic monitoring bracelet and fled to the Dominican Republic. On June 30, 2006, the movant was arrested in the Dominican Republic and removed to Puerto Rico, and subsequently returned to the Southern District of Florida.  (Cr-DE#'s 31, 32).  On August 1, 2006, Israel Perez, Jr., Esq. filed a permanent appearance on behalf of the movant.  (Cr-DE# 37).  On August 10, 2006, a second change of plea hearing was scheduled.  (Cr-DE# 39).  At this hearing, the Honorable Federico A. Moreno refused to accept the movant's change of plea and set the matter for trial on October 16, 2006.  (Cr-DE#'s 39, 40).  The Court did not accept the change of plea because the movant, although steadfast about his desire to plead guilty, did not agree to the factual proffer set forth by the government.   While the government's factual proffer established that the value of the stolen goods was $3,300,000.00 (the amount specified in the plea agreement), the movant stated that his role was limited to purchasing approximately $23,000.00 worth of stolen pants.

Defense counsel set a third change of plea hearing on August 16, 2006, at which time the Court again did not accept the movant's change of plea. (Cr-DE# 41).  The movant again did not agree to his involvement in the criminal enterprise set forth in the government's factual proffer.  On October 6, 2006, the movant filed

3

a motion to continue the trial date based upon a stipulation for substitution of counsel that was filed that same day. (Cr-DE# 53). Juan E. Mourin, Esq. replaced Perez.    At the calendar call on October 10, 2006, the Court granted the motion to continue and set the case for a trial to begin on November 13, 2006. (Cr-DE# 55).

Prior to the trial date, however, the case was set for a fourth change of plea hearing on November 7, 2006, at which time the Court accepted the movant's plea of guilty to Count 2 of the Indictment pursuant to a written plea agreement. (Cr-DE#'s 56, 58). This time the movant agreed to the government's factual proffer in its entirety.  Due to the history of the case, the Court endeavored to determine if the movant was admitting his involvement in the entire $3,300,000 theft.  The Court first asked defense counsel "Is he admitting, Mr. Mourin to $3.3 million?"   Tr. at 5. Defense counsel replied "Yes, Judge, we have discussed and reviewed at length the government's proffer that will be read later during the plea and Mr. Gonzalez is in agreement with it completely." Id.  The government then read the factual proffer, after which the Court asked the movant "You agree with everything the prosecutor has said about your involvement in this case?" Id. at 9. The movant then replied "Yes." Id.  The Court then verified that no one had forced or threatened the movant to cause him to plead guilty and confirmed that the movant was satisfied with his attorneys.   Id. at 9-10. The Court then expressly questioned the movant regarding aspects of the plea agreement.  "There are two sections of the guidelines that are mentioned here that I think very important. One is the amount of loss, which we already talked about is $3.3 million. And the other is that you were a person in the business of receiving and selling stolen property. Do you agree with both of those items?" Id. at 13. The Movant's response was "Yes." Id.  There was then the following exchange regarding promises not enumerated in the plea

4

agreement:

> The Court: Have there been any other promises other than
> what we have discussed here and other than what is in
> this six-page plea agreement?

> The Defendant: No. The only promise has been the meeting
> that I am going to have with the government in order to
> clarify my situation.

> The Court: All right. Is there an expectation of a 5K1 or
> a rule 35?

> Mr. Curtis: Your Honor, there are discussions about that being
> down the road, but I think our filing that would be contingent
> upon whether or not his assistance is deemed substantial.

Id. at 13-14.  After finding that the movant's guilty plea was
knowingly and voluntarily made, the Court adjudicated the movant
guilty of Count 2. Id. at 15.

The written plea agreement sets forth the terms under which
the movant's agreed to plead guilty to Count 2 (receiving stolen
property, in violation of 18 U.S.C. §2315).  The government agreed
to dismiss the remaining counts at sentencing.  Plea Agreement at
¶2.  The plea agreement specified that the movant would be
sentenced in conformity with the federal sentencing guidelines;
that the Court retained the authority to sentence him within and up
to the statutory maximum sentence; and that he could not withdraw
his guilty plea solely as a result of the sentence imposed.  Id. at
¶3.  The plea agreement also noted that the statutory maximum term

of imprisonment as to Count 2 was 10 years, followed by a term of supervised release of up to 3 years and a fine of up to $250,000. Id. at ¶4. It also specifically states that the Court "will order restitution." Id. It further outlined the government's agreement to recommend a three-level reduction of the guideline range, subject to certain conditions, based on the movant's timely acceptance of responsibility. Id. at ¶8. The plea agreement also set forth the parties' joint agreement, not binding on the Court or the probation officer, to recommend that the movant be sentenced within the advisory sentencing guideline range. Id. at ¶7. The plea agreement further provides that "under Section 2B1.1(b)(1) of the Sentencing Guidelines, the relevant amount of actual, probable or intended loss resulting from the offense committed in this case is $3,300,000." Id. at ¶9(a). It also states that "under Section 2B1.1(b)(4) of the Sentencing Guidelines, the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property." Id. at ¶9(b). The plea agreement also set forth the parties' joint agreement to recommend that the movant not receive an aggravated role enhancement under Section 3B1.1 of the Sentencing Guidelines. Id. at ¶10. The movant agreed to waive his right to appeal the sentence. Id. at ¶11. Notably, the plea agreement did not contain any language with respect to either the potential cooperation of the movant with law enforcement agents or the possibility of a sentence reduction based on any such cooperation.

A PSI was thereafter prepared, to which the movant's counsel filed objections. On January 30, 2007, the movant was sentenced to 96 months' imprisonment and ordered to pay approximately $1.5 million in restitution. (Cr-DE# 64). No direct appeal was filed. This motion to vacate was timely filed on February 6, 2008, less

than one year after the conviction became final.[1]  (DE# 1).


## Offense Conduct


The following statement of the facts appears in the PSI at ¶¶16-19, to which no objections were filed.

On March 15, 2005, law enforcement agents received information from a confidential source that Armani brand suits were being sold from a white cargo van displaying Florida license plate W64-DFG. On April 18, 2005, surveillance in the area identified by the confidential source led to the identification of a white van bearing a similar Florida license plate: "W64-DFJ." That van was registered to a company owned by the Movant. A law enforcement agent maintained surveillance on the vehicle, which was driven by Elier Sanchez Guerrero, to an unmarked warehouse located at 1231 NW 93rd Court. Law enforcement officers established surveillance of that warehouse, and over the course of the next two days observed Elier Sanchez Guerrero, Niarco Garcia, Juan Antonio Crespo, Juan Manuel Crespo and Lazaro Coca entering the warehouse. Many of those individuals were observed taking suspected stolen merchandise out of the warehouse, including Toshiba DVD players that were delivered to a warehouse owned by Timing International, Inc. After that delivery was made, law enforcement officers were able to confirm that the DVD players had been stolen based on a check of their serial numbers.

On April 20, 2005, law enforcement officers arrested Elier

---

[1] See Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Sanchez Guerrero, Niarco Garcia, Juan Antonio Crespo, Juan Manuel Crespo and Lazaro Coca, and the following day executed a search warrant of the 93rd Court warehouse. Recovered from the warehouse were (1) Armani apparel stolen from Somerset, New Jersey; (2) Canon printers stolen from Memphis, Tennessee; (3) Motorola cable modems stolen from a Miami-area warehouse; and (4) Lexmark printers stolen from an unknown location. The total value of the stolen goods was approximately $3,300,000. Elier Sanchez Guerrero, Niarco Garcia, Juan Antonio Crespo, Juan Manuel Crespo, Lazaro Coca, and another conspirator, Hernan Foye, all pled guilty to possession of stolen merchandise in connection with the 93rd Court warehouse. Pursuant to their plea agreements, Garcia, Coca, Juan Antonio Crespo and Juan Manuel Crespo were all debriefed by law enforcement agents and indicated that the movant was either the head or co-head of their cargo theft ring.

Juan Antonio Crespo provided information regarding a second warehouse located at 6158 NW 74th Ave where the Movant and Niarco Garcia stored stolen merchandise. On September 28, 2005, law enforcement agents observed two males moving stolen goods from that warehouse. One of those individuals stated that he had been hired by the movant to move the goods, and that the movant had given him keys to the warehouse. While speaking to the agents, that individual received a phone call from the Movant. A law enforcement agent overheard the movant during this call. A short time later, the movant was observed by law enforcement agents driving by the warehouse and observing the scene. The warehouse was searched, and recovered from the warehouse were, among other stolen goods, 76 rolling clothing racks that were from the Somerset, New Jersey warehouse where the Armani burglary had occurred. Niarco Garcia provided information that after the Armani theft the clothing had originally been stored in the 74th Avenue warehouse with the

Movant's knowledge and consent. It was then moved to the 93rd Court warehouse, where it was eventually recovered by law enforcement, but the clothing racks had been left behind in the 74th Avenue warehouse.

On December 15, 2005, the Movant was arrested. At the time of his arrest, he was wearing one of the Armani shirts that had been stolen from Somerset, New Jersey.

<u>Discussion of Claims</u>

<u>Ineffective Assistance of Counsel</u>

In this collateral proceeding, the movant raises several claims which challenge counsel's effectiveness, as listed in detail above and discussed herein. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(<i>en banc</i>). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong Strickland standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Herein, the movant claims that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial. (Cv-DE#11).

Moreover, review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

At the outset, the Court notes that the movant waived his right to contest all nonjurisdictional defects and defenses, when he entered a knowing and voluntary guilty plea. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Smith v. United States, 447 F.2d 487, 488 (5 Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5 Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11 Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5

Cir. 2000), <u>citing</u>, <u>United States v. Smallwood</u>, 920 f.2d 1231, 1240 (5 Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." <u>Id</u>.   To enter into a voluntary plea, the defendant must understand the law in relation to the facts. <u>McCarthy v. United States</u>, 394 U.S. 459 (1969).

The movant first asserts that he was denied effective assistance of counsel in deciding whether to proceed to trial or enter into a plea agreement, thus rendering his plea invalid.   He argues that defense counsel failed to advise him that Count 2, to which he pled guilty, was the underlying offense in the conspiracy alleged in Count 1.   He claims that he believed he was pleading guilty to possessing $4,000 worth of stolen goods rather than $3.3 million and, had he known, he would have insisted on going to trial.   He also claims that has counsel investigated the case and been more prepared, he would have discovered that the government had a weak case because it was based solely on the hearsay testimony of convicted felons.   Finally, he claims that he felt compelled to plead guilty due to counsel's apparent inability or unwillingness to take the case to trial, as evidence by counsel becoming "visibly upset" when the movant requested him to explain or discuss the available options.

The movant's claims are belied by the terms of the written plea agreement and by the transcript of his final change of plea hearing.   With regard to the gravamen of this claim, that the movant believed he was only pleading to possession of $4,000 worth of stolen pants rather than $3,300,000 worth of stolen merchandise, the plea agreement specifically memorializes that "the relevant amount of actual, probable or intended loss resulting from the offense committed in this case is $3,300,000." The plea agreement

also states that the movant "was a person in the business of receiving and selling stolen property." The movant agreed with the terms and signed the plea agreement.

Further, at the change of plea hearing, the movant testified that he was well aware of the nature of the crime to which he was pleading guilty and was accepting responsibility for $3,300,000 in stolen property, as demonstrated by the following:

> The Court: Count II says that from at least as early as March 2005 through April 20th, 2005, Teodoro Julio Gonzales knowingly received, possessed, concealed, stored, bartered, sold, disposed of goods, merchandise a value of $5,000 or more. And I remember the last time, for the benefit of the lawyers who weren't here, we had a dispute, the defendant had a dispute with which warehouse he controlled and things of that nature. That's why I'm starting with this, to make sure I understand what the defendant is saying today. How much merchandise is the government saying Mr. Gonzalez should be held responsible for?
>
> Mr. Curtis: $3.3 million, Your Honor.
>
> The Court: Is he admitting, Mr. Mourin to $3.3 million?
>
> Mr. Mourin: Yes, Judge, we have discussed and reviewed at length the government's proffer that will be read later during the plea and Mr. Gonzalez is in agreement with it completely.

Tr. at 4-5. The government then read a detailed factual proffer

regarding the movant's role in the charged offense that again provided that the value of the stole merchandise was "$3.3 million." Id. at 5-9.  The movant stated, unequivocally, that he agreed with "everything" in that factual proffer. Id. at 9. After that, the Court specifically discussed with the movant the fact that the plea agreement provided for a loss amount of $3,300,000, and once again the movant explicitly and definitively stated that he agreed to that loss amount. Id. at 13.

In addition, in the affidavit in support of his Section 2255 Motion, the movant admits that he did not have a plea agreement that limited his criminal liability to 200 stolen pants.  In the context of his argument that defense counsel had a side cooperation agreement with the government, he states "I first refused to such offering because it required that I accept responsibility for $3.3 million as the value of the stolen property possessed. I asked Mr. Mourin to get back with the government and tell it that I was willing to plead guilty to Count Two of the indictment if I was made responsible only for the two-hundred (200) Giorgio Armani men slacks that I bought from Niarco Garcia. Mr. Mourin, however, got once more upset and told me that that was not an option.  Next time Mr. Mourin came to me was only to tell me that he had secured an agreement with the government under which I was going to be able to fully cooperate with the government in exchange for a sentence reduction recommendation. Mr. Mourin told me emphatically that there was nothing of which I should be worried about; that even if I plead guilty to Count Two of the indictment, to include the $3.3 million stipulation, I was going to receive a very short sentence because of the "5K1.1" motion that the government was going to file in my behave."  (DE# 11, Exh. 1)(*sic*)(emphasis added).

This is a clear admission that the movant knew that the

government's offer to allow him to plea to Count 2 was predicated on his acceptance of responsibility for the full $3,300,000 loss. The movant's understanding of the nature of Count 2 is further confirmed by the sentencing hearing.  Prior to that hearing, the PSI laid out a recitation of the facts drawn largely from the government's factual proffer from the change of plea hearing. It also provided for an 18 level increase in the movant's base offense level based upon the agreed-to loss amount of $3,300,000. PSI at ¶ 32.  The Court also specifically offered the movant the opportunity to withdraw his guilty plea at the sentencing hearing when the government did not make a motion to reduce his guideline range under Section 3E1.1(b).  Tr. at 16.  The movant elected not to withdraw his guilty plea and chose to proceed to sentencing. Id.

Further, the movant's claim that his counsel had failed to investigate and properly evaluate the strength of the government's case is belied by the history of this case. The movant claims that prior counsel had opined that the government had a weak case, yet the movant originally scheduled this case for a change of plea while represented by former counsel Perez.  The movant also absconded from the country, an act inconsistent with the notion that he was sure to be acquitted.  In addition, after the movant had been returned to the United States, he once again scheduled his case for a change of plea while represented by Mr. Perez. Although the Court did not accept the movant's change of plea, it was Mr. Perez who, again, less than a week later, set the matter down for a change of plea.  As discussed above, even though the movant would not agree to the factual proffer, he was adamant about his desire to plead guilty rather than facing a trial.  Moreover, at his final change of plea hearing, the Movant explicitly stated that he was pleased with the representation of Mr. Mourin and, as discussed above, he fully admitted to possessing stolen goods as alleged in Count 2.

14

To the extent the movant claims that he was denied effective assistance of counsel, where his lawyer may have pressured him to plead guilty, his claim has no merit.

To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11 Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any

statement that he gives under oath.

Id.

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding.  At that time, the movant acknowledged under oath[2] that he was satisfied with counsel's representation, and that he had discussed possible consequences of pleading guilty, and the sentencing guidelines with counsel prior to the change of plea.  The court advised and the movant acknowledged the potential consequences of entering a guilty plea, including the minimum and maximum statutory terms of imprisonment. (Id.:7,11-12). The movant also denied being forced, threatened or coerced into changing his plea, and denied being made any representations in order to convince him to plead guilty.  The movant further acknowledged that the sentence imposed may be different from any estimate given by his attorney or anyone else and if more severe, he would be unable to withdraw his plea.  The movant confirmed that as part of the negotiated plea, he was waiving his right to a direct appeal following imposition of sentence.

The movant also argues that his guilty plea should be vacated because he relied on counsel's representation that the government had agreed, in a side cooperation agreement, to file a motion for

---

[2] The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11 Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible.  Machibroda v. United States, 368 U.S. 487 (1962).

reduction of sentence.

Although defense counsel advocated on behalf of the movant in an attempt to obtain a motion for sentence reduction, the government never agreed to enter into such an agreement. At the sentencing hearing, counsel argued that the movant had provided extensive cooperation to the government. Counsel, stated:

> Mr. Gonzalez wishes me to make this statement to the Court at this time recognizing there are some people in the courtroom, but he has instructed me that he wants the Court to be made aware of the fact that he has, in fact, been providing the government with assistance. That assistance thus far has led to at least two cases being made. And there's other information he's provided that hopefully will lead to other stuff in the future.

Contrary to the movant's claim, at the sentencing hearing the government never acknowledged that he had provided "substantial" cooperation. Th government made clear that the movant's assistance was far from complete or substantial and that there were significant hurdles for him to overcome if he hoped to obtain a motion for a sentence reduction:

> The Court: The government says not quite.

> Mr. Cronin: Not quite. As I understand, first of all, no federal cases have resulted from the defendant's attempts to cooperate. I understand some state arrests have been made based upon information he has provided. Those investigations are still ongoing. One of the problems here, You Honor, is although the defendant has been

17

debriefed and has been very anxious to provide information on other individuals, he simply refuses to come clean in these debriefings about his and other's roles in this case. And if he is going to get a benefit from his cooperation - -

The Court: That's kind of a little bit consistent with the way he's been.

Mr. Cronin: It is. And if the defendant is going to get a benefit from his assistance on other cases, that will be done at an appropriate time through a rule 35 motion.

Before pronouncing sentence, the Court made clear that the filing of a Rule 35 motion was far from a certainty:

I'm not considering the cooperation. If you cooperate, the prosecutor has to be satisfied. He files a piece of paper, and then I can give you a reduced sentence. The prosecutor says that you got to be more truthful about what you did in this case. It's up to you. You say you have. He says you haven't You want the benefit of that, you got to talk to him and come clean as they say in English. That's up to you. It's not up to me.

Further, as discussed below, there is nothing in the record to indicate that the government ever entered into a side cooperation or otherwise agreed to file any motion for reduction in sentence as an inducement or condition of the guilty plea.

The movant argues that defense counsel rendered ineffective assistance of counsel by incorrectly stating at the sentencing hearing that the restitution ordered by the Court was mandatory. Pretermitting the fact that this argument may be procedurally barred because a claim that the restitution was mandatory was not raised on direct appeal, the claim has no merit.

Counsel's statement that restitution was mandatory was a correct statement of the law. The movant's argument is that restitution is provided for by Section 5(B)1.1 of the Sentencing Guidelines and, because the Guidelines are no longer mandatory, the sentencing judge "could have applied his discretion and chose not to apply 5(B)1.1." The basis of this argument is incorrect because the restitution was not ordered pursuant to Section 5(B)1.1, but rather pursuant to 18 U.S.C. §3663A(a)(1), which provides:

> Notwithstanding any other provisions of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.

Subsection (c) of this statute includes "an offense against property under this title" and "any offense . . . in which an identifiable victim has suffered a physical injury or pecuniary loss." Accordingly, by statute, the sentencing judge was required to order restitution in this case, as it was mandatory. To be

sure, the movant was aware of the mandatory nature of restitution in this case prior to entering a guilty plea, as the plea agreement expressly provided that "in addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,00, and <u>will</u> order restitution." (Emphasis added).

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary. Thus, the movant's claim that counsel exerted pressure and/or otherwise forced him to plead guilty is clearly refuted by the movant's sworn declarations at the change of plea proceeding. The movant's post-conviction allegations that he was not properly advised as to whether to plead guilty, that he misunderstood the amount of stolen property to which he was pleading, that counsel misstated the mandatory nature of restitution, that counsel induced him to plead guilty based on a side cooperation agreement or that he was otherwise coerced by counsel is clearly refuted by the record and/or otherwise cured by the Court's colloquy at the change of plea proceeding. Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. See <u>Strickland</u>, <u>supra</u>.

<u>Government's Alleged Breach of Cooperation Agreement</u>

The movant argues that the government has breached its agreement to file a 5K1.1 or Rule 35(b) motion.

Federal Rule of Criminal Procedure 35 provides for the correction or reduction of a criminal sentence upon a defendant's substantial assistance in investigating or prosecuting another person upon a motion by the government. The government has a considerable amount of discretion regarding this decision, and the Eleventh Circuit has held that the government's determination of "substantial assistance" is encompassed within the zone of prosecutorial discretion and subject to review only upon a showing of a constitutionally impermissible motive or the breach of an express agreement to file a motion. United States v. Gonslaves, 121 F .3d 1416, 1419 (11 Cir.1997); United States v. Forney, 9 F.3d 1492, 1502 (11 Cir.1993)(citing "Wade v. United States, 504 U.S. 181 (1992)).

In Wade, supra, the Supreme Court held that "federal district courts have authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive[3]." Wade, 504 U.S. at 185-86. The Court emphasized that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or to an evidentiary hearing. Nor would additional but generalized allegations of improper motive." Id.

Here, the movant has not made a substantial threshold showing that the government promised to file a substantial assistance motion. To the contrary, whether or not the movant's cooperation resulted in substantial assistance remained in the sole discretion of the government.

---

[3] A prosecutor's refusal to file a substantial-assistance motion would be unconstitutional if, for example, the refusal was based upon the defendant's race or religion. Id.

A review of the record indicates that the plea agreement contains no cooperation language, and there is nothing in the plea agreement that provided the movant with any promises or assurances that he would receive a sentence reduction. Instead, the movant claims that there was a "side cooperation agreement" with the government, which he claims counsel negotiated prior to his plea. The extent of any such "side cooperation agreement," however, was made clear on the record at the movant's change of plea hearing:

> The Court: Have there been any other promises other than what we have discussed here and other than what is in this six-page plea agreement?
>
> The Defendant: No. The only promise has been the meeting that I am going to have with the government in order to clarify my situation.
> The Court: All right. Is there an expectation of a 5K1 or a rule 35?
>
> Mr. Curtis: Your Honor, there are discussions about that being down the road, but I think our filing that would be contingent upon whether or not his assistance is deemed substantial.

Thus, as the record makes clear, there is no evidence that there was any promise by the government that a Section 5K1.1 or Rule 35 motion would be filed. The movant was only assured that he would be afforded a meeting with law enforcement officers to "clarify [his] situation," and, if the Government eventually "deemed" his cooperation "substantial," then the Government, at its sole discretion, could elect to file a motion for a sentence reduction. The character of this agreement is further supported by the

language in the letter signed by the movant on November 15, 2006, just 8 days after the change of plea hearing:

> This is Not a Cooperation Agreement. This Office is in no way offering to confer a sentencing benefit upon GONZALEZ simply because he has agreed to submit to an interview, and to date, no agreement to impart such a benefit upon GONZALEZ has been made by this Office.

Gov't Exhibit 6-A, ¶. Further, the fact that the government never promised to file a Section 5K1.1 or Rule 35 motion is confirmed by the affidavits submitted by the movant. In the affidavit of the movant's sister, Maria Rosario Gonzalez, she states:

> Mr. Juan Mourin, Esq., my brother's attorney of record, told me personally that he had secured an agreement with the government concerning the substantial assistance that my brother Teodoro Julio Gonzalez and myself could provide to the FBI, DEA, U.S. Marshalls, and the Metro Dade Police Department. Mr. Mourin also told me that if the information/assistance provided resulted substantial, in exchange for such substantial assistance the prosecution would file a Rule 5K1 motion for reduction of my brother's federal sentence. Or, alternatively, the prosecution would file a Fed. Rule 35(b) motion for the same purpose.

This language indicates that Ms. Gonzalez acknowledges that the filing of a motion for a 5K1.1 or Rule 35 motion was not an absolute promise but rather was contingent upon the cooperation being substantial. The affidavit of Carlos Alberto Padron shows a similar understanding of the agreement with the government. Mr.

Padron asserts that:

> I have heard during these meetings Mr. Juan Mourin
> telling Ms. Gonzalez that there was an agreement secured
> with the federal prosecution to allow Ms. Gonzalez and
> Teodoro Julio Gonzalez to offer and provide all and any
> assistance they could to the pertinent law enforcement
> agencies in exchange for a possible sentence reduction
> recommendation through either a Rule 5K1. or Fed. Rule
> 35(b) if such assistance resulted substantial to the law
> enforcement agencies involved.

Finally, in the movant's affidavit, he acknowledges that the
government did not make an unconditional promise to file a motion
for a sentence reduction:

> I offered and provided my substantial assistance to the
> United States Government and/or to any other law
> enforcement agency that so required. My initial aim was
> in hope to receiving, or be considered, for a sentence
> reduction under Rule 5K1. or 35(b)(1)(B) of the Fed.
> Rules of Criminal Procedure. . . . I understand that in
> order to qualify/or being considered for any
> recommendation for a sentence reduction, the information,
> assistance, and cooperation offered must be considered
> substantial. . .

In sum, there is no credible argument that the movant was promised
that the Government would file a Section 5K1.1 or Rule 35 motion.

<u>Conclusion</u>

24

Based on the foregoing, it is recommended that the Amended Motion to Vacate [DE# 11] be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 9th day of February, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Teodoro Julio Gonzalez, Pro Se
      Reg. No. 76304-004
      F.C.I.-Edgefield
      P.O. Box 725
      Edgefield, SC 29824

      Anne Ruth Schultz, AUSA
      U.S. Attorney's Office
      99 N.E. 4th Street
      Miami, FL 33132

      Sean Paul Cronin, AUSA
      U.S. Attorney's Office
      11200 N.W. 20th Street
      Miami, FL 33172